ADAM ARRINGTON, Employee-Plaintiff v. TEXFI INDUSTRIES, Employer-Defendant, and AMERICAN POLICYHOLDERS INSURANCE COMPANY, Carrier-Defendant

No. COA95-1124

(Filed 6 August 1996)

**Workers' Compensation § 230 (NCI4th)— employee earning higher wages post-injury—duties not "made work"—plaintiff's ability to perform duties—insufficiency of findings—inadequate basis for award of permanent disability benefits**

The Industrial Commission erred in awarding permanent and total disability benefits to plaintiff where the evidence before the Commission was that plaintiff held a custodial position at defendant's plant; the hourly wage he received as a custodian was higher than what he earned in his pre-injury position as a chemical mixer; plaintiff failed to establish, through competent testimony, that his custodial position was "made work"; because plaintiff offered no competent evidence that the custodial position was "made work," it represented strong if not conclusive evidence of his earning capacity; but because the Commission failed to make any findings or draw any conclusions on whether plaintiff was physically and mentally capable of performing his custodial duties, the court on appeal was unable to determine whether an adequate basis existed for the Commission's award of permanent and total disability benefits to plaintiff.

**Am Jur 2d, Workers' Compensation §§ 395-399.**

**Admissibility of opinion evidence as to employability on issue of disability in health and accident insurance and workers' compensation cases. 89 ALR3d 783.**

Appeal by defendants from opinion and award filed 13 July 1995 by the North Carolina Industrial Commission. Heard in the Court of Appeals 23 May 1996.

*Anderson & Anderson, by Michael J. Anderson, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, by Thomas W. Page and Jennifer Ingram Mitchell, for defendant-appellants.*

MARTIN, Mark D., Judge.

Defendants Texfi Industries, Inc., and American Policyholders Insurance Company (collectively defendants) appeal the North Carolina Industrial Commission's award of permanent and total disability benefits to plaintiff Adam Arrington (Arrington).

Arrington was employed by Texfi Industries (Texfi) for approximately sixteen years prior to his injury on 12 August 1988. At the time of his injury, Arrington was responsible for mixing chemicals to make sizing used to thicken yarn (chemical mixer position). Arrington sustained burns to the lower half of his body when the sizing chemicals boiled over the side of the mixing vat. On 17 August 1988 the parties executed I.C. Form 21, Agreement for Compensation for Disability, which was approved by the Commission on 12 September 1988.

On 2 January 1989 Arrington returned to light-duty work at the suggestion of Dr. H. D. Peterson, his treating physician. After attempting to return to his chemical mixer position, Arrington complained of chronic fatigue and weakness. Dr. Peterson diagnosed Arrington as suffering from neurasthenia—an affliction of unknown origin which induces a "weakness of the spirit and the body."

Since 2 January 1989 Arrington has remained in the continuous employ of Texfi. At present, Arrington holds a custodial position which requires him to sweep, clean, empty wastebaskets, monitor machines, drive a forklift, operate a beam truck and pull beams, use a chain hoist to unload beams, cut waste yarn from beams, and perform other general custodial duties. Further, the hourly wage Arrington earns in the custodial position is higher than in his pre-injury chemical mixer position.

On 28 May 1991 defendants filed I.C. Form 28B, Insurance Carrier's Report of Compensation and Medical Paid. On 22 July 1992 Arrington filed I.C. Form 33, Request for Hearing. In an opinion and award filed 18 August 1994, Deputy Commissioner Lawrence B. Shuping, Jr., concluded Arrington was not entitled to permanent and total disability benefits. The Full Commission reversed Deputy Commissioner Shuping and awarded Arrington permanent and total disability benefits.

On appeal defendants contend the Commission erred by finding: (1) Arrington's light-duty job is not necessary to Texfi's business operations; (2) Arrington's chronic fatigue and weakness was caused by

his burns; and (3) Arrington is physically and mentally incapable of earning his same pre-injury wages in the same or other employment. Defendants also allege Arrington provided insufficient notice of his intent to seek permanent and total disability benefits and, therefore, defendants were unprepared to present evidence at the hearing.

We consolidate defendants' assignments of error into one issue—whether Arrington is entitled to permanent and total disability benefits under section 97-29 of the Workers' Compensation Act (Act).

"The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (1991) (emphasis added). Disability therefore refers to a diminished capacity to earn money rather than physical infirmity. *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 434, 342 S.E.2d 798, 804 (1986).

To establish disability, a claimant must prove:

(1) [he] was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) [he] was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) [his] incapacity to earn was caused by [his] injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). More particularly, any person claiming benefits under section 97-29 "has the burden of proving that he is, as a result of the injury arising out of and in the course of his employment, totally unable to 'earn wages which . . . [he] was receiving at the time [of injury] in the same or any other employment.' " *Burwell v. Winn-Dixie Raleigh*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994) (*quoting Tyndall v. Walter Kidde Co.*, 102 N.C. App. 726, 730, 403 S.E.2d 548, 550, *disc. review denied*, 329 N.C. 505, 407 S.E.2d 553 (1991)) (emphasis added).

In the present case, Arrington currently holds a custodial position at Texfi. The custodial position pays an hourly wage in excess of what Arrington received as a chemical mixer, his pre-injury position. Therefore, as recognized by Deputy Commissioner Shuping, we are confronted with a factual conundrum—Arrington seeks permanent and total disability benefits even though he: (1) has been employed by Texfi since recovering from his injury; and (2) presently earns a higher hourly wage than before his injury.

**ARRINGTON v. TEXFI INDUSTRIES**

[123 N.C. App. 476 (1996)]

Defendants argue the custodial position is "any other employment" within the meaning of section 97-2(9) and, consequently, Arrington is not entitled to permanent and total disability benefits.

It is well settled, however, that not every position offered to a claimant is considered "any other employment" under section 97-2(9). *See Peoples,* 316 N.C. at 438-439, 342 S.E.2d at 806. Specifically, an employer may not avoid liability under the Act by creating or modifying a position "which the employee under normally prevailing market conditions could find nowhere else . . . ." *Id.* at 439, 342 S.E.2d at 806. As stated by our Supreme Court:

> an employer may . . . avoid liability under the Act by offering an injured employee a job at his old wage within his ability to perform . . . only if the proffered job is . . . available generally in the market. If the proffered job is generally available in the market, the wages earned in it may well be strong, if not conclusive, evidence of the employee's earning capacity.

*Id.* at 440, 342 S.E.2d at 807 (emphasis added). The *Peoples* holding recognizes that wages earned in "made work" are inherently unreliable indicators of an employee's actual earning capacity because the "wages may reflect not the employee's earning capacity in a competitive situation but rather a company policy which, if abrogated for any reason . . . , will force the employee into a position where he will be unable, because of his injuries, to continue to earn such wages . . . ." *Id.* at 437, 342 S.E.2d at 805 (*quoting Allen v. Industrial Commission,* 347 P.2d 710, 718 (1959)) (emphasis deleted).

In *Peoples,* plaintiff sought permanent and total disability benefits because he allegedly contracted a debilitating lung disease while working for defendant. *Id.* at 427-428, 342 S.E.2d at 800. After learning of plaintiff's illness, defendant transferred plaintiff to the supply room to minimize his exposure to dust. *Id.* at 428, 342 S.E.2d at 800. After four days in the supply room, plaintiff was hospitalized for "chest pain and breathing difficulty." *Id.* Plaintiff did not return to work after being discharged from the hospital. *Id.* at 428, 342 S.E.2d at 801.

In an effort to employ plaintiff despite his medical limitations, defendant modified an existing position and offered it to plaintiff. *Id.* Defendant's personnel manager testified the job offered to plaintiff "has never before existed at [defendant's plant]. It was created especially for plaintiff with his physical limitations in mind." *Id.* at

429-430, 342 S.E.2d at 801. Dr. Thomas K. White, an expert in vocational rehabilitation and job skills, also testified he was "not aware of any job on the market today similar to [the job offered plaintiff] with the same pay scale. . . . [T]his is not really a standard job which is in existence in the labor market but that this is going to be a tailored, engineered type of job." *Id.* at 431-432, 342 S.E.2d at 802.

Based on the above detailed testimony, the Supreme Court found that defendant was the only employer who would offer plaintiff such a job opportunity. *Id.* at 439, 342 S.E.2d at 806. The Court therefore held "the job [defendant] offers plaintiff cannot be considered as evidence of plaintiff's ability to earn wages." *Id.* at 439, 342 S.E.2d at 807.

In the instant action, Arrington currently holds a custodial position at Texfi. The hourly wage he receives as a custodian is higher than what he earned in his pre-injury position as a chemical mixer. Defendants contend this establishes Arrington's wage earning capacity is the same as, if not better than, before his injury.

The Commission found, however, "although [Texfi] may well be attempting to accommodate [Arrington's] chronic weakness and fatigue, the lighter work that [Arrington] does on the premises is nonproductive work that is not necessary to [Texfi's] smooth operation." This finding essentially characterizes Arrington's custodial position at Texfi as the kind of "made work" which "cannot be considered as evidence of plaintiff's ability to earn wages." *Id.* at 439, 342 S.E.2d at 807. Therefore, as the "Commission's findings of fact are binding on appeal when supported by competent evidence," *Lackey v. R. L. Stowe Mills*, 106 N.C. App. 658, 661, 418 S.E.2d 517, 519, *disc. review denied*, 332 N.C. 345, 421 S.E.2d 150 (1992), it follows we must determine whether the present record supports the Commission's finding that Arrington's custodial position is "made work."

Arrington's custodial duties include sweeping, cleaning, emptying wastebaskets, monitoring machines, driving a forklift, operating a beam truck, using a chain hoist to unload beams, and cutting waste yarn from beams. To support his claim this is "made work," Arrington directs this Court to Dr. Peterson's deposition testimony. Although, at first blush, Dr. Peterson's statement that the custodial position is "make-do work" appears dispositive, a closer reading of the record discloses two fatal flaws.

First, Dr. Peterson's characterization of the custodial position as "make-do work" was not based upon the availability of the custodial

position on the open market, but rather was apparently premised upon Arrington's subjective feelings of embarrassment and inadequacy when his physical incapacity forced him to refrain from heavy labor. The Act, however, provides compensation only for objective and quantifiable loss in one's ability to earn wages. *Peoples*, 316 N.C. at 434-435, 342 S.E.2d at 804.

Second, unlike the plaintiff's expert in *Peoples*, we note Dr. Peterson is a plastic surgeon with special expertise in burn treatment—not an industrial engineer; a vocational rehabilitation and job skills expert; or an individual with expertise in, or knowledge of, the yarn industry as a whole, or Texfi in particular. As Dr. Peterson has no special knowledge, training, education, or skill regarding employment within Texfi or the yarn industry, his characterization of the custodial position as "make-do work" is immaterial to either the legal or factual determination of whether the custodial position is "made work." *See id.* at 438, 342 S.E.2d at 806 (emphasizing testimony about "make work" nature of plaintiff's job provided by defendant's personnel manager and a vocational rehabilitation and job skills expert). *See also* N.C. Gen. Stat. § 8C-1, Rule 702 (1992). Therefore, under *Peoples*, Arrington failed to establish, through competent testimony, that his custodial position is "made work."

Because Arrington proffered no competent evidence the custodial position is "made work," it represents "strong, if not conclusive, evidence of the employee's earning capacity." *Peoples*, 316 N.C. at 440, 342 S.E.2d at 807. We note, however, the Commission failed to make any findings or draw any conclusions on whether or not Arrington is physically and mentally capable of performing his custodial duties. *See Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (entitled to benefits if physically or mentally incapable of working). "This Court is therefore unable to determine whether adequate basis exists, either in fact or law, for the Commission's award." *Hilliard*, 305 N.C. at 596-597, 290 S.E.2d at 684.

Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

Judges JOHNSON and LEWIS concur.