An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-649

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

JAMES MICHAEL VENERIS,
    Employee-Plaintiff,

    v.

                                         From the North Carolina
                                         Industrial Commission
                                         I.C. File No. 770306

DOMTAR PAPER COMPANY, LLC, F/K/A
WEYERHAEUSER COMPANY,
    Self-Insured Employer,

    and

SPECIALITY RISK SERVICES,
    Third Party Administrator,

    Defendants.

Appeal by plaintiff from opinion and award entered 22 March 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 6 November 2013.

*Wallace and Graham, P.A., by Edward L. Pauley, for plaintiff-appellant.*

*Teague Campbell Dennis & Gorham LLP, by Tracey L. Jones and Leslie P. Lasher, for defendants-appellees.*

HUNTER, JR., Robert N., Judge.

James Michael Veneris ("Plaintiff") appeals from an opinion and award of the North Carolina Industrial Commission denying his claim for a ten percent compensation increase pursuant to N.C. Gen. Stat. § 97-12 (2011).  Plaintiff contends that he is entitled to the compensation increase because his injury was caused by the willful failure of his employer, Domtar Paper Company, LLC ("Defendant"), to comply with 29 C.F.R. § 1910.133 (2013).  For the following reasons, we disagree and affirm the Industrial Commission's opinion and award.

## I.    Factual & Procedural History

On 22 May 2007, Plaintiff filed a claim for benefits with the Industrial Commission seeking compensation for an eye injury Plaintiff sustained while working at Defendant's paper plant. Defendant denied liability and the matter came on for a hearing on 13 July 2011.  The evidence presented at the hearing tended to show the following.

Plaintiff began working for Defendant on 16 May 1977 at Defendant's paper plant in Plymouth, North Carolina. Plaintiff's first position with the company was as an "extra board," a job where Plaintiff was asked to "fill-in" for jobs as needed by Defendant.  Plaintiff's work as an extra board required him to spend his days working in maintenance with

millwrights, welders, and pipefitters. Plaintiff held the extra board position for approximately two and a half years. Thereafter, Plaintiff moved into various roles including working as boiler room utility person and in Defendant's electrical generation plant.

In November 1982, Plaintiff became a utility mechanic, a position he held until January 2011. As a utility mechanic, Plaintiff was tasked with repairing and maintaining equipment at the plant. In this role, Plaintiff was required to assist welders at least three days a week for periods of time as short as twenty minutes and as long as the entire work day. Plaintiff was required to hold material while the welders worked, which placed Plaintiff in close proximity to the welding arc. As a result, Plaintiff was often exposed to welding light.

Plaintiff testified at the hearing that Defendant provided welders with welding shields and mandated their use while actively welding. Plaintiff was provided with clear safety glasses to wear while assisting the welders inside and UV sunglasses to wear when working outside. Plaintiff was often instructed by the welder to avert or close his eyes during the welding. Plaintiff testified that his eyes had been burned from

the welding arc on at least one occasion during his tenure at the paper plant.

On the morning of 25 December 2005, Plaintiff began noticing an impairment to his central vision. After several medical evaluations, a neuro-opthamologist concluded that Plaintiff was probably suffering from welder's arc retinopathy, a condition caused by exposure to intense welding light. Although Plaintiff continued to work for Defendant after this diagnosis, his vision began to affect his performance.

Calvin Outlaw ("Mr. Outlaw"), Defendant's Safety and Security Manager, testified that employees were supplied with standard safety glasses, tinted sunglasses for outdoor use, and welding shields for welding. Mr. Outlaw testified that Defendant was aware of its obligation to provide appropriate eye protection to its employees and believed it had met that obligation. Mr. Outlaw admitted that Plaintiff did not have welding eye protection and admitted that Plaintiff was exposed to welding light. Nevertheless, Mr. Outlaw testified that Defendant would have provided the necessary eye protection to Plaintiff if Defendant had identified or recognized the need ahead of time.

After hearing the foregoing evidence, the Deputy Commissioner entered an opinion and award on 10 September 2012 concluding that Plaintiff's eye injury was compensable under the Workers' Compensation Act. The opinion and award also concluded that Plaintiff's compensation should be increased by ten percent pursuant to N.C. Gen. Stat. § 97-12 due to Defendant's willful failure to provide appropriate eye protection as required by 29 C.F.R. § 1910.133. Both parties appealed to the Full Commission.

On 22 March 2013, the Full Commission entered an opinion and award upholding the compensability of Plaintiff's injury, but denied Plaintiff's claim for a ten percent increase in compensation under N.C. Gen. Stat. § 97-12. Plaintiff filed timely notice of appeal to this Court on 2 April 2013.

## II.  Jurisdiction & Standard of Review

Plaintiff's appeal from the Industrial Commission's opinion and award lies of right to this Court pursuant to N.C. Gen. Stat. § 7A-29(a) (2011). *Accord* N.C. Gen. Stat. § 97-86 (2011).

Our review of an opinion and award of the Industrial Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This

'court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.'" *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citation omitted) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Anderson*, 265 N.C. at 433–34, 144 S.E.2d at 274.

However, "[c]onclusions of law by the Industrial Commission are reviewable *de novo* by this Court." *Bond v. Foster Masonry, Inc.*, 139 N.C. App. 123, 127, 532 S.E.2d 583, 585 (2000). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quotation marks and citation omitted).

### III. Analysis

The only question presented to this Court by Plaintiff's appeal is whether the Full Commission erred in denying Plaintiff's claim for a ten percent compensation increase pursuant to N.C. Gen. Stat. § 97-12. Plaintiff contends that he

is entitled to the compensation increase because Defendant willfully violated 29 C.F.R. § 1910.133. We disagree.

Pursuant to N.C. Gen. Stat. § 97-12, "[w]hen the injury or death [of the employee in a workers' compensation case] is caused by the willful failure of the employer to comply with any statutory requirement or any lawful order of the Commission, compensation shall be increased by ten percent (10%)." As used in this statute, "willful" is defined as "a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, a duty assumed by contract or imposed by law." *Brown v. Kroger Co.*, 169 N.C. App. 312, 318, 610 S.E.2d 447, 451 (2005) (quotation marks and citations omitted).

Furthermore, the federal occupational safety and health standards promulgated by the Occupational Safety and Health Administration ("OSHA") are "statutory requirements" within the scope of N.C. Gen. Stat. § 97-12. *Id.* at 317-18, 610 S.E.2d at 451; *see also* N.C. Gen. Stat. § 95-131(a) (2011) ("All occupational safety and health standards promulgated under the federal act . . . shall be adopted as the rules of the Commissioner of this State unless the Commissioner decides to adopt an alternative State rule . . . ."); N.C. Gen. Stat. § 95-129(2) (2011) ("Each employer shall comply with occupational

safety and health standards or regulations promulgated pursuant to this Article[.]"). Relevant to Plaintiff's claim, 29 C.F.R. § 1910.133(a)(1) places an affirmative duty on employers to "ensure that each affected employee uses appropriate eye or face protection when exposed to eye or face hazards from flying particles, molten metal, liquid chemicals, acids or caustic liquids, chemical gases or vapors, or potentially injurious light radiation."

Here, the Full Commission entered the following findings of fact:

> 12. Calvin Outlaw, Defendant's Safety and Security Manager since 2001, agreed with Plaintiff's testimony that Plaintiff worked around welders quite often; that Plaintiff was exposed to welding light; that he did not have eye protection for that welding light; that utility mechanics were given sunglasses and safety goggles but not welding protection; that goggles and sunglasses do not protect against welding light; and that Plaintiff was not protected from welding light but he should have been. He had worked for Defendant for thirty-four years.

> 13. Mr. Outlaw also testified that United States Department of Labor Occupational Safety & Health Administration (OSHA) regulation 29 CFR § 1910.133 requires the employer to ensure that each affected employee use appropriate eye or face protection when exposed to eye or face hazards from flying particles, molten metal, liquid chemicals, acids or caustic liquids,

chemical gases or vapors, or potentially injurious eye radiation. Mr. Outlaw testified that based upon this OSHA regulation, Defendant provided employees with protective eye gear such as safety glasses, prescription eyewear with shields on them, and welding shields for welders. Mr. Outlaw believed that Defendant provided Plaintiff and other employees the appropriate protective gear. There is insufficient evidence to show that Mr. Outlaw was aware of the hazards of welding light for utility mechanics prior to the hearing before the Deputy Commissioner.

Based on these findings of fact, the Full Commission entered the following conclusion of law:

10. There is insufficient evidence to establish that Defendant willfully failed to comply with any specific OSHA regulation to award an increase of ten percent of Plaintiff's ongoing temporary total disability compensation. Defendant provided Plaintiff with clear safety glasses and UV tinted goggles towards the last five to ten years of his work in the plant. There is insufficient evidence to find that Defendant was aware that the safety eye protection provided to Plaintiff would not provide protection against welders' maculopathy, which is a rare condition.

In challenging the opinion and award of the Full Commission, Plaintiff contends that Finding of Fact 13 is not supported by competent evidence and that Conclusion of Law 10 is not supported by the findings of fact. We address each in turn.

First, Plaintiff takes issue with two components of Finding of Fact 13: (1) that "Mr. Outlaw believed that Defendant provided Plaintiff and other employees the appropriate protective gear;" and (2) that "[t]here is insufficient evidence to show that Mr. Outlaw was aware of the hazards of welding light for utility mechanics prior to the hearing before the Deputy Commissioner." We hold that competent evidence exists in the record to support both of these statements. Specifically, Mr. Outlaw testified as follows:

> [Questioner:] Okay. Mr. Outlaw, are you aware of any safety or OSHA regulations or statutory requirements that Weyerhauser or Domtar is not following with regards to the protection from welding exposure?
>
> [Mr. Outlaw:] No.
>
> [Questioner:] So it's your testimony that Weyerhauser/Domtar is following all the regulations required under OSHA?
>
> [Mr. Outlaw:] Yes.
>
> . . . .
>
> [Questioner:] Mr. Veneris was not protected from hazardous light, is that correct?
>
> [Mr. Outlaw:] I would not go as far as to say he wasn't protected. We

will supply any type of equipment that was needed. If there was a need and they had identified it to us or we had recognized that it was a hazard, he would have been protected. But from what he was saying that he was only wearing clear eyewear and never brought it up to any type of leadership that there was a hazard or caused any problems, no—from what he's saying, no, he wasn't protected. But was there equipment available for him to—did we make equipment available? If he was exposed, we did.

. . . .

[Questioner:]  Mr. Outlaw, other than Mr. Veneris claiming he has an occupational disease related to this peripheral exposure to welding arcs there hasn't been any other claims to your knowledge, correct? . . .

[Mr. Outlaw:]  That is correct.

. . . .

[Questioner:]  [W]ould there have been any reason for Domtar or Weyerhauser to think that utility mechanics were in any way put in harms way doing their job?

Mr. Outlaw:  No, no.

Accordingly, because Mr. Outlaw's testimony indicated (1) that

Defendant believed it had been providing OSHA compliant protective gear to its employees, and (2) that Defendant was unaware of the hazard faced by utility mechanics, the Full Commission had evidence tending to support Finding of Fact 13. *See Pittman v. Int'l Paper Co.*, 132 N.C. App. 151, 156, 510 S.E.2d 705, 709, *aff'd per curiam*, 351 N.C. 42, 519 S.E.2d 524 (1999) ("The facts found by the Commission are conclusive upon appeal to this Court when they are supported by competent evidence, even when there is evidence to support contrary findings.").

Second, Plaintiff contends that Conclusion of Law 10 is not supported by the findings of fact. Specifically, Plaintiff directs our attention to a number of the Full Commissions findings of fact tending to show that Defendant knew about the hazards of welding light, knew that Plaintiff worked in close proximity to welding light, knew that plaintiff would be affected by the welding light, and knew about the OSHA regulation, yet provided safety glasses to Plaintiff that were not rated for welding. Plaintiff contends that these findings contradict Finding of Fact 13 and demonstrate Defendant's willful violation of 29 C.F.R. § 1910.133.

However, it does not follow from these facts that it was

Defendant's deliberate purpose to avoid its obligation to provide Plaintiff with appropriate eye protection. Indeed, Defendant could have believed, even mistakenly, that utility mechanics exposed to welding light did not require the same level of eye protection that Defendant afforded to welders. Finding of Fact 13 supports this inference, stating that "Mr. Outlaw believed that Defendant provided Plaintiff and other employees the appropriate protective gear." Accordingly, because there is insufficient evidence to establish that it was Defendant's deliberate purpose to avoid its obligation under 29 C.F.R. § 1910.133, we hold that Conclusion of Law 10 is supported by the Full Commission's findings of fact.

### IV. Conclusion

For the foregoing reasons, we affirm the opinion and award of the Industrial Commission denying Plaintiff's claim for a ten percent increase in compensation pursuant to N.C. Gen. Stat. § 97-12.

Affirmed.

Judges HUNTER, Robert C., and CALABRIA concur.

Report per rule 30(e).